HOWELL, J., recused.

---

## MRS. ELIZA W. HUNTINGTON *v.* JAMES D. BROWN.

The exclusion of warranty in a sale cannot avail the vendor, when it is fraudulently made, as he is bound to disclose redhibitory vices and defects, not apparent in the things sold, when he knows of their existence; and the vendee is not precluded, by such exclusion, from showing that at, and previous to the time and date, the vendor was aware of the existence of redhibitory defects, and fraudulently concealed them.

Although it be agreed that the seller is not subject to any warranty, he is, however, accountable for whatever results from his personal acts, and any contrary stipulation is void.  His silence will not avail him, when he does not disclose infirmities.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J.

*E. W. Huntington for plaintiff.*—1. The right of action arose prior to the adoption of the present Constitution.   It was a legal right under the Constitution and laws of the State then existing; and no subsequent change in the organic or statutory law could modify or destroy it.   "No State shall pass any *ex post facto* law, or law impairing the obligation of contracts."  Constitution of the United States, Art. 1, § 10.

2. The Constitution of 1864, however, is inapplicable to this case.  The object of the suit is not to assert the right of property in man, but to recover a sum of money received by defendant under fraudulent sale of a slave.

3. The evidence is conclusive that the slave died of an incurable disease.   See Testimony of Dr. Wederstrandt and others.

4. It is proved that, for one month previous to the sale, the slave had been in the Touro Infirmary, under treatment for the malady which destroyed his life, and that he was taken out of the infirmary by defendant, on the day following the day of sale.

5. No proof was adduced to show that plaintiff was aware of the existence of the disease when he purchased the slave.

6. The express exclusion of warranty is not, as a general rule, equivalent to a declaration of unsoundness.   Vendor is bound to disclose vices and maladies within his knowledge, not apparent on simple inspection. *Hivest* v. *Lacaze,* 3 R. 357.   *Galpin* v. *Jessup,* 3 R. 90.   *Civil Code,* 2526. *Delansen* v. *Robichaux,* 17 L. 101.   *Turner & Renshaw* v. *Wheaton,* 18 L. 37.   *Robert* v. *St. Romes,* 2 A. 135.   *Franck* v. *Hough,* 14 A. 659.

7. What constitutes fraud ?   C. C. Art. 1841, Nos. 5, 12, 2526.

8. As to reservation of action for expenses, etc.   3 R. 90; 3 R. 359; 13 L. 39; 2 A. 135; 14 A. 659.

*Durant & Hornor for defendant and appellant.*—I. This action is *contra bonos mores*, and prohibited by the letter and the spirit of the Constitution of this State. Constitution Art. 1 and 2.

<div align="right"></div>

II. Even conceding, for argument, that it is proved (which it is not) that the disease of the slave was incurable, there are three sufficient reasons why the sale should not be rescinded :

1. Because there is no proof that the defendant knows this fact. *Belknap* v. *Kerediz*, 15 A. 203.

2. Because plaintiff was fully informed of the disease and duration of the sale.

3. Because the plaintiff bought without warranty, and under the information that the slave was a runaway, as well as sickly ; and *she took the risk of both vices.*

III. Plaintiff did not wait for Brown to return before purchasing. She did not pay *half the price of a sound negro.* She knew what she was buying, and reposed confidently on her own judgment and experience. She must, therefore, sustain the loss. Digest 50, 17, 203 ; 3 Savigney, $\S$ 115. *St. Romes* v. *Pore*, 10 Mar. 215. *Thompson* v. *Milburn*, 1 N. S. 472. *Nelson* v. *Linard*, 16 La. 340. *Galpin* v. *Jessup*, 3 Rob. 91. *Philpps* v. *Berger*, 15 A. 111.

ILSLEY, J. This suit was instituted in the Sixth District Court, to rescind the sale of a slave and recover his price, with costs incurred, in consequence of a redhibitory defect, with which the said slave was alleged to have been affected previously to and at the time of the sale, and that, too, to the knowledge of the vendor, the defendant, who fraudulently concealed it from the vendee, the plaintiff.

She avers that, had she known the existence of the defect, she would not have bought the slave.

The general issue was pleaded and a special denial of the fraud alleged.

It is a textual provision of the law, and not an open question in the jurisprudence of this State, that "The exclusion of warranty in an act of sale cannot avail the vendor when it is fraudulently made, as he is bound to disclose redhibitory vices and defects not apparent in the things sold, when he knows of their existence, and the vendee is not precluded by such exclusion from showing that, at and previous to the time of sale, the vendor was aware of the existence of redhibitory defects and fraudulently concealed them. See C. C. 2449 and 2526. 2480 C. C. *Hannibal* v. *Faulk*, 14 659. *Ogden* v. *Michel and husband*, 37 ; 4 R. 156.

In the act of sale, from Brown to Mrs. Huntington, is the following clause: "Said slave is hereby guaranteed by said vendor in title only, and not against the vices, maladies or defects, prescribed by law, of which refusal to guarantee said slave against said vices, maladies and defects, said purchaser hereby takes cognizance and renounces all recourse therefor hereafter."

In the absence of fraudulent concealment by Brown, of the redhibitory malady in the slave, at the time of the sale, this clause would have protected him; but he cannot, if the fraud be shown, escape from the provision of the 2480 Article of the Civil Code, which reads thus: "Although it be agreed that the seller is not subject to any warrantry, he is,

7

HUNTINGTON
BROWN. however, accountable for whatever results from his personal act, and any contrary stipulation is void." The reticence by the vendor of a redhibitory malady in the slave, which good faith binds him to disclose to his vendee, would be as fraudulent in the eye of the law as a false statement in regard to his physical condition.

The case of *Faulk* v. *Hough*, 14 La. Rep. 660, enunciates the true principle by which this and all kindred cases must be governed.

That the slave, at and previous to the time of sale, had a serious if not an incurable disease, is incontestably proved by the physicians who testified on the trial of the case; and that the vendor knew of its existence, and that the condition of the slave would soon render him almost worthless, is not less manifest from the testimony of Dr. Bensadon, who says he was taken by Brown, to be sold, out of the Touro Infirmary, wherein he had been from August, 1859, till the 6th or 8th of February, under medical treatment for a progressive disease. See 2496 C. C.

The fact that Dr. Bensadon offered only $300 for the slave, for hospital purposes, shows that defendant was aware that he was physically unsound; and, indeed, it is to be presumed that, as the slave was under medical treatment in an infirmary during six months, the defendant must have known what was the matter with him.

There is no error in the judgment of the lower Court, and it is therefore ordered, adjudged and decreed that it be affirmed, with costs.

HOWELL, J., recused.